**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CHRISTINA F.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-3167** |
| **FRANK BISIGNANO,** | * | |
| **Commissioner of Social Security,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

**MEMORANDUM OPINION**

On September 24, 2025, Plaintiff Christina F. petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying her claim for benefits.[1]  ECF No. 1.  Pending before the Court is Plaintiff's appeal, which is fully briefed. ECF Nos. 12, 14–15.  No hearing is necessary.  Local Rule 105.6 (Dec. 1, 2025 D. Md.).  This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the reasons set forth below, the Commissioner's decision is reversed in part and affirmed in part.

**I.      BACKGROUND**

The instant action is Plaintiff's third appeal in connection with her claim for benefits. Following an overview of the procedural history of this case and the applicable statutory framework is a discussion of the pertinent sections of the prior administrative decisions and the operative administrative decision at issue in this appeal.

---

[1]  This case was referred to a United States Magistrate Judge with the parties' consent and reassigned to the undersigned on June 5, 2026.  ECF Nos. 3, 5–6; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

A.      **Procedural History**

In 2016, Plaintiff filed an application for Supplemental Security Income under Title XVI of the Social Security Act (the Act), 42 U.S.C. § 1381 *et seq.*, alleging a disability onset date of September 13, 2014.[2]  ECF No. 8-1 at 236.[3]  Plaintiff claimed that she was disabled within the meaning of the Act because she had a learning disability, post-traumatic stress disorder (PTSD), anxiety, bipolar disorder, and left hip pain.  ECF No. 8-1 at 112.  After the SSA denied Plaintiff's application for benefits, Plaintiff filed a request for reconsideration, and the Commissioner affirmed the initial determination.  ECF No. 8-1 at 150, 153.  On March 17, 2017, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on February 11, 2019.  ECF No. 8-1 at 27, 155, 1055–1079.  On March 4, 2019, the ALJ rendered a decision (ALJ Decision I) in which he found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 8-1 at 27–39.  Plaintiff requested further review, which the Appeals Council denied on January 25, 2020.  ECF No. 8-1 at 12.

On March 18, 2020, Plaintiff filed suit in this Court seeking review of ALJ Decision I. ECF No. 8-1 at 1038; *Christina F.* v. *Saul*, DLB-20-721 (D. Md.) (*Christina F. I*).  With the parties' consent, this Court remanded the case to the Commissioner for further proceedings. ECF No. 8-1 at 1046.  On April 15, 2021, the Appeals Council vacated ALJ Decision I and remanded the case to the same ALJ.  ECF No. 8-1 at 1047–1050.  The ALJ held a hearing and rendered a decision (ALJ Decision II) on December 10, 2021, in which he found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 8-1 at 953–972.  Plaintiff requested further review, which the Appeals Council denied on May 10, 2023.  ECF Nos. 8-1 at 943; 8-2

---

[2]  At the February 11, 2019 hearing, Plaintiff amended her alleged onset date of disability from September 13, 2014, to April 29, 2017.  ECF No. 8-1 at 27, 1061.

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

at 22–24.  On June 6, 2023, Plaintiff filed suit in this Court seeking review of ALJ Decision II.

*Christina F.* v. *O'Malley*, Civil Action No. CDA-23-1528, 2024 WL 2114047 (D. Md. May 10,

2024) (*Christina F. II*).  On May 10, 2024, this Court reversed the Commissioner's decision.  *Id.*

at *5.  On August 29, 2024, the Appeals Council vacated ALJ Decision II and remanded the case

to a different ALJ.  ECF No. 8-2 at 391–394.  The ALJ held a hearing and rendered a decision

(ALJ Decision III) on July 23, 2025, in which she found that Plaintiff was not disabled within the

meaning of the Act.  ECF No. 8-2 at 245–262.  On September 24, 2025, Plaintiff filed the instant

action seeking review of ALJ Decision III.  ECF No. 1.

### B. Statutory Framework

The Act authorizes Supplemental Security Income payments to "persons who have a

'disability.'" [4]  *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003).   The Act defines disability as the

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a).  To receive the requested benefit under the SSA,

"a plaintiff has the burden of proving disability."  *Britt* v. *Saul*, 860 Fed. Appx. 256, 257 (4th

Cir. 2021).

Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-

step sequential evaluation process.  20 C.F.R. § 416.920.  Through this process, an ALJ

evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability;

(2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a

listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any

---

[4]  Supplemental Security Income provides benefits based on financial need.  *Delk* v.
*Colvin*, 675 F. Appx. 281, 282 (4th Cir. 2017).

other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)).  "The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted).  At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies the third step, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5." *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (citations omitted).  If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity.  20 C.F.R. § 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179-180 (4th Cir. 2016).  Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations."  20 C.F.R. § 416.945.  The ALJ then uses the residual functional capacity determination at the fourth and fifth steps of the disability assessment.  20 C.F.R. § 416.920(e); *Monroe*, 826 F.3d at 179-180.

## C.    ALJ Decision I and *Christina F. I*

After engaging in the five-step sequential evaluation, the ALJ determined that Plaintiff was not "under a disability" as defined in the Act, and the SSA properly denied her application for benefits.  ECF No. 8-1 at 29–39.  The ALJ determined that the Plaintiff has the severe impairments of severe opiate dependence; major depressive, mood, and anxiety disorders; borderline intellectual functioning; PTSD; and right hip arthralgia.  ECF No. 8-1 at 29.  As

4

relevant to this appeal, the ALJ determined at step three that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (Appendix 1).[5] *Id*. at 29. Before continuing to step four, the ALJ determined that Plaintiff retained the residual functional capacity to perform light work with several limitations. *Id*. at 31. On appeal, this Court granted the parties' joint request to remand the case to the Commission without reaching the merits of the parties' arguments. ECF No. 8-1 at 1046. Thereafter, the Appeals Council vacated the agency's final decision and remanded the case to the same ALJ for further proceedings consistent with this Court's Order. ECF No. 8-1 at 1047.

**D.     ALJ Decision II and *Christina F. II***

On remand, the ALJ engaged in the five-step sequential evaluation and again concluded that Plaintiff was not under a disability as defined in the Act, and the SSA had properly denied her application for benefits. ECF No. 8-1 at 957–972. The ALJ determined that Plaintiff had the severe impairments of severe opiate dependence; major depressive, mood, and anxiety disorders; borderline intellectual functioning; PTSD; right hip arthralgia; and obesity. ECF No. 8-1 at 957. As relevant to this appeal, the ALJ determined at step three that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in . . . Appendix 1." ECF No. 8-1 at 957 (bold removed). The ALJ identified four pertinent Listings—12.04 (depressive, bipolar, and related disorders), 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma-

---

[5] Appendix 1 provides a listing of impairments, including mental impairments, and three metrics to evaluate mental impairments, which are known as the "Paragraph A," "Paragraph B," and "Paragraph C" criteria. *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020) (citing 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 (Appendix 1) §§ 12.00 *et seq*., 112.00 *et seq*.); *see also* II.B., *infra*. The listing of impairments found in Appendix 1 is incorporated into the evaluation criteria for Supplemental Security Income Benefits. 20 C.F.R. § 416.925.

and stressor-related disorders).  *Id.*; Appendix 1 §§ 12.04, 12.05, 12.06, 12.15.  The ALJ

explained that Listing 12.05 "is based on the three elements that characterize intellectual

disorder: significantly subaverage general intellectual functioning; significant deficits in current

adaptive functioning; and the disorder manifested before age 22."  ECF No. 8-1 at 959; *see also*

Appendix 1 § 12.05.  The ALJ determined that the Paragraph A criteria for this listing were "not

met because the only available intellectual testing, which occurred several years after the

claimant turned 22, indicated a full-scale IQ score of 72" and Plaintiff did not have "marked

deficits" in any of the Paragraph B functional areas.  ECF No. 8-1 at 960; *see also* footnote 5,

*supra* (discussing Paragraph A, B, and C criteria); II.B., *infra* (same).  The ALJ found that

Plaintiff had a moderate limitation in all four of the Paragraph B areas, and that "the evidence

fail[ed] to establish the presence of the [P]aragraph C[] criteria."[6]  ECF No. 8-1 at 958–959.

Before continuing to step four, the ALJ determined that Plaintiff retained the residual functional

capacity to perform light work with multiple limitations.  *Id*. at 960.

On appeal, this Court found that the ALJ "erred by failing to explain why Paragraph C's

criteria were not satisfied," something that was particularly important given that the decision

"contain[ed] multiple findings that appear[ed] to contradict [the ALJ's] step-three conclusion,"

including a finding satisfying Paragraph C's medical documentation requirement.  *Christina F.*

*II,* 2024 WL 2114047, at *3-4.  The Court also noted that the ALJ "did not reach any conclusions

regarding the Paragraph A criteria relevant to Listings 12.04, 12.06 and 12.15," which made it

"impossible to tell" whether the ALJ's decision was supported by substantial evidence.  *Id*. at *4

(quotation marks and citation omitted).  The Court directed that on remand "the ALJ should

'specific[ally] appl[y]' Listing criteria to the evidence of record and explain why that evidence

---

[6] A "moderate" limitation, which falls in the middle of a five-point rating scale, means
that a claimant's "functioning in this area independently, appropriately, effectively, and on a
sustained basis is fair."  Appendix 1 § 12.00(F)(2)(c).

does or does not support a finding that the Listings discussed above are met or equaled." *Id.* (quoting *Radford* v. *Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).  Thereafter, the Appeals Council vacated the agency's final decision and remanded the case to the Commissioner for further proceedings consistent with this Court's Order.  ECF No. 8-2 at 391–394.

###### E.      ALJ Decision III

On the second remand, a different ALJ engaged in the five-step sequential evaluation and again concluded that Plaintiff was not under a disability as defined in the Act, and the SSA had properly denied her application for benefits.  ECF No. 8-2 at 248–262.  The ALJ found that Plaintiff suffered from the severe impairments of PTSD; depressive, panic, bipolar, and substance abuse disorders; agoraphobia with panic attacks; and mild intellectual disability.  *Id.* at 248.  At step three, the ALJ again determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in . . . Appendix 1."  *Id.* at 249 (bold removed).  The ALJ identified three pertinent Listings—12.04 (depressive, bipolar, and related disorders), 12.05 (intellectual disorder), and 12.06 (anxiety and obsessive-compulsive disorders)—and again determined that the Plaintiff did not meet or medically equal any of them.  *Id*.  The ALJ determined that the Paragraph A criteria were "not met because the only intellectual testing, which occurred several years after the claimant turned 22, indicated a full-scale IQ score of 72" and because the Plaintiff did not have "marked deficits" in any of the Paragraph B criteria.  *Id.* at 252.  The ALJ also found that Plaintiff had a moderate limitation in all four of the Paragraph B areas, and that "the evidence fails to establish the presence of the [P]aragraph C criteria."  *Id.* at 249–251.

Before continuing to the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity to "perform a full range of work at all exertional levels" with the following nonexertional limitations:

> [S]he can understand, remember and carry out simple instructions;
> she can use judg[]ment to make simple work-related decisions; she
> can have occasional interactions with co-workers and supervisors,
> but no tandem job tasks; she cannot have interaction with the public;
> she can deal with occasional changes in a routine work setting; and
> she can perform work without a specific production rate pace, such
> as an assembly line or hourly production quotas.

*Id*. at 252 (bold removed).  At step four, the ALJ noted that Plaintiff had no past relevant work, and that she was "29 years old, which is defined as a younger individual" on the date the application was filed.  *Id*. at 260 (bold removed).  Lastly, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that the claimant could perform.  *Id*.  The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Act and that the SSA had properly denied her claim for benefits.  *Id.* at 261–262.

## II.    DISCUSSION

On appeal, Plaintiff argues that the ALJ (1) failed to comply with the prior remand order, (2) did not employ the correct legal standards when assessing evidence from a nonmedical source, and (3) posed an inadequate hypothetical question to the vocational expert.  ECF No. 12 at 8, 17, 22.  The Commissioner argues the opposite.  ECF No. 14 at 6–16.  Following a discussion of the applicable standard of review, each argument is addressed in turn below.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)).  The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."  *Id.*  Factual findings supported by substantial evidence "shall be conclusive."  42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the

Secretary if [the] decision is supported by substantial evidence."). The phrase "substantial evidence" is a "term of art" that "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek* v. *Berryhill*, 587 U.S. 97, 102-103 (2019) (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015). "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

B.    **Paragraph A and C Criteria for Listings 12.04, 12.06, and 12.15**

At step three of the sequential evaluation process, an ALJ must determine whether a claimant has an "impairment[ ] that meets or equals" a Listing, that is, a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). Appendix 1 provides a listing of impairments. Within Appendix 1, "Adult Listings 12.00 *et seq*. . . . pertain to mental impairments, and consist of (1) '[P]aragraph A criteria,' which consist of a set of medical findings; (2) '[P]aragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) '[P]aragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a

9

history of ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020). To meet the criteria for a Listing within Section 12.00, an ALJ must find that a claimant's impairment meets or equals (1) the Paragraph A criteria and (2) either the Paragraph B or C criteria. *Id.*; *Shawna G.* v. *Martin O'Malley, Commissioner, Soc. Sec. Admin.*, Civil Action No. CDA-23-2677, 2024 WL 3904758, * 4 (D. Md. Aug. 22, 2024); Appendix 1, Adult Listings § 12.00 *et seq.*. If an ALJ determines that the claimant's impairment meets or equals a listing, the ALJ must find that the claimant is disabled. *Shawna G.*, 2024 WL 3904758, at *4.

In ALJ Decision III, the ALJ identified three pertinent Listings: 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).[7] Each of these Listings identifies relevant Paragraph A, B, and C criteria. Paragraph A is slightly different in each listing. *Compare* Appendix 1 § 12.04(A) (outlining medical documentation required for depressive disorder and bipolar disorder) *with* § 12.06(A) (outlining medical documentation required for anxiety disorder, panic disorder or agoraphobia, and obsessive-compulsive disorder) *and* § 12.15(A) (outlining medical documentation required for trauma- and stressor-related disorders). Paragraphs B and C, which are identical for all three listings, provide:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.
>
> OR

---

[7] The undersigned notes that despite making substantially similar determinations as to the Plaintiff's severe impairments, each ALJ decision identified different listings. *Compare* ECF No. 8-1 at 29–30 *with* ECF No. 8-1 at 957 *and* ECF No. 8-2 at 248–249.

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
  1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
  2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

Appendix 1 §§ 12.04, 12.06, 12.15 (internal citations omitted; emphasis in original, line breaks added).

Here, because the ALJ found that because Plaintiff's mental impairments did not cause at least one "extreme" limitation or two "marked" limitations, the Paragraph B criteria relevant to Listings 12.04, 12.06, and 12.15 were not satisfied. ECF No. 8-2 at 251. Plaintiff does not dispute the ALJ's Paragraph B findings. ECF Nos. 12 at 13–17; 15. Thus, in order for the ALJ to have made a *per se* disability finding at step three of the sequential evaluation process, she would have had to find that both the Paragraphs A and C criteria were met for one or more of the identified Listings. 20 C.F.R. § 416.920(a)(4)(iii). The entirety of the ALJ's analysis of the Paragraph A criteria in ALJ Decision III was:

> In this case, these requirements are not met because the only intellectual testing, which occurred several years after the claimant turned 22, indicated a full-scale IQ score of 72 and as described above she does not have marked deficits in any of the Paragraph B criteria.

ECF No 8-2 at 252 (internal citations omitted). The entirety of the ALJ's analysis of the Paragraph C criteria was:

> The undersigned has also considered whether the [P]aragraph C criteria of 12.04, and 12.06 are satisfied. In this case, the evidence fails to establish the presence of the [P]aragraph C criteria. After a thorough review of the record, the undersigned finds that the record fails to suggest any basis for a conclusion that the requirements of Part C are met in this case.

*Id*. at 251 (internal quotations omitted). [8] ALJ Decision III fails to provide the analysis necessary to explain why Plaintiff's impairments do not meet or equal the requirements of Paragraphs A and C of Listings 12.04, 12.06, and 12.15, for precisely the same reasons that the analysis was insufficient in ALJ Decision II. To be sure, "[t]o determine whether the ALJ's step-three findings are supported by substantial evidence, the Court reads the ALJ's decision 'as a whole.'" *Shawna G.*, 2024 WL 3904758, *5 (quoting *Smith* v. *Astrue*, 457 Fed. Appx. 326, 328 (4th Cir. 2011)). Yet, even when read as a whole, ALJ Decision III, just as ALJ Decision II, "did not reach any conclusions regarding the Paragraph A criteria," nor did it "explain why [] Paragraph C's criteria were not satisfied." *Christina F. II*. 2024 WL 2114047 at *3-4. *Christina F. II* documented these contradictions in detail:

> For instance, the ALJ noted that, "on December 31, 2017, [Plaintiff] was formally diagnosed with PTSD, which was designated as chronic and severe." Tr. 953. This finding appears to satisfy Paragraph C's medical documentation requirement. *See* 20 C.F.R. pt. 404, Subpt. P, app. 1 §§ 12.04C, 12.06C, 12.15C.
>
> The ALJ also noted that Plaintiff engaged in mental health treatment as early as 2015. Tr. 951. Specifically, the ALJ observed that Plaintiff "has improved ability to cope with her past trauma and current stressors due to her engagement in treatment." *Id*.; *see also* Tr. 947 ("[T]he treatment record generally indicates stable symptoms and good results with medication."); Tr. 954 ("Her depression screen in January 2019 was actually negative for any depression symptoms and she reported that she was handling personal stressors well during a subsequent visit in March 2019."); *id*. ("Notably, on April 22, 2019, the claimant agreed to decrease her suboxone dose from 18 to 16[.]").
>
> Given these findings—and absent any relevant explanation in the ALJ's decision—it is unclear how the ALJ found Plaintiff to lack "medical treatment[ ] . . . that is ongoing and that diminishes . . . symptoms and signs of" a mental disorder. 20 C.F.R. pt. 404, [S]ubpt. P, app. 1 §§ 12.04C, 12.06C, 12.15C.

---

[8] Despite being remanded to a different ALJ, this language is nearly identical to the Paragraph A and C analyses of the prior administrative decision that this Court remanded in *Christina F.* v. *O'Malley*, Civil Action No. CDA-23-1528, 2024 WL 2114047 (D. Md. May 10, 2024) (*Christina F. II*); *see also* I.D. *supra*.

2024 WL 2114047 at *3-4 (line breaks added).  ALJ Decision III suffers from precisely the same issues as ALJ Decision II, and similarly "contains multiple findings that appear to contradict [the] step-three conclusion."  *Id*. at *3.

The Commissioner argues that that the record "does not indicate marginal adjustment" as required for a Paragraph C finding.[9]  ECF No. 14 at 10.  For example, the Commissioner contends that the "evidence failed to establish the presence of the Paragraph C criteria" because Plaintiff "reported that she was able to do laundry, dress herself, and perform childcare; she also was able to clean daily, cook, prepare meals[,] and shower or bathe herself."  *Id*. at 9–10.  Yet, mere citation to a claimant's ability to conduct activities of daily life is inadequate for the purposes of Paragraph C analysis.  *Damon K. D.* v. *Commissioner, Soc. Sec.*, Civil Action No. CCB-17-2680, 2018 WL 6270950, *2 (D. Md. Nov. 30, 2018) (Gallagher, J.), *report and recommendation adopted*, 2018 WL 7047644 (D. Md. Dec. 20, 2018); *see also Anthony L.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-18-3910, 2019 WL 13398144 (D. Md. Aug. 19, 2019) (remanding where the ALJ decision provided inadequate analysis and explanation of whether the claimant's impairment met or equaled the Paragraph C criteria).  Accordingly, just like *Christina F. II*, ALJ Decision III is not supported by substantial evidence and therefore requires remand.  2024 WL 2114047 at *3-4; *Britt*, 860 Fed. Appx. at 259.

### C.      Evidence From Non-Medical Source

Plaintiff further argues that ALJ Decision III is "unsupported by substantial evidence" because the ALJ "failed to employ the correct legal standards when assessing the evidence from a nonmedical source," specifically, a "third-party function report" authored by her boyfriend, Brian Wolfe.  ECF No. 12 at 17–19.  The Commissioner counters that the regulations do not

---

[9]  Marginal adjustment means that one's adaptation to the requirements of daily life is fragile such that, for example, an individual is unable to function outside of the house or a more restrictive setting without substantial psychosocial support.  Appendix 1 § 12.00(G)(2)(c).

require an ALJ to "articulate how they consider evidence from nonmedical sources in their decisions." ECF No. 14 at 11–12 (citation omitted). The undersigned concurs.

The applicable regulation outlines five categories of evidence in disability claims: (1) objective medical evidence, (2) medical opinion evidence, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a). The regulation provides that "[e]vidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim," and explains that the SSA "may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records." 20 C.F.R. § 416.913(a)(4). Importantly, ALJ's are "not required to articulate how [they] considered evidence from nonmedical sources." 20 C.F.R. § 416.920c(d) . Where the ALJ "stated that the whole record was considered, . . . we take [them] at [their] word," "absent any evidence to the contrary." *Reid* v. *Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Here, the ALJ noted that Mr. Wolfe's "Third Party Statement" is "a lay opinion based solely upon casual observation, rather than objective medical examination and testing" that "largely echoes that provided by the claimant" and "is not consistent with the evidence." ECF No. 8-2 at 257 (italics removed). The ALJ stated she considered "all of the evidence" in reaching her conclusions. *Id.* at 246. Accordingly, the ALJ did not err in considering the nonmedical opinion evidence.

### D.    Vocational Expert Testimony

Finally, Plaintiff argues that the ALJ set forth an "inadequate hypothetical to the vocational expert" when she included a limitation that Plaintiff "can perform work without a specific production rate pace, such as on an assembly line or hourly production quotas." ECF No. 12 at 22–23. Plaintiff contends that because the phrase "specific production rate pace" is not

defined within the Social Security Regulations or elsewhere, "it would have been impossible for the [Vocational Expert] to assess whether a person with Plaintiff's limitations could maintain the pace proposed." ECF No. 12 at 23.

ALJs are afforded "great latitude in posing hypothetical questions . . . so long as there is substantial evidence to support the ultimate question." *Koonce* v. *Apfel*, No. 98-1144, 1999 WL 7864, at *5, 166 F.3d 1209 (Table) (4th Cir. Jan. 11, 1999). Hypothetical questions need only be "based on substantial evidence and accurately reflect a plaintiff's limitations." *Sarah H.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-20-3358, 2021 WL 4426875, at *1 n.1 (D. Md. Sept. 27, 2021); *see also Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record."). Here, the ALJ posed a hypothetical question to the vocational expert that included, among other things, a limitation that the hypothetical person could "perform work without a specific production rate such as assembly line or hourly production quotas." ECF No. 8-2 at 291. As the Commissioner notes, this hypothetical question conveyed all six of Plaintiff's work-related mental limitations contained in her residual functional capacity finding. ECF No. 14 at 14–15; *see also* ECF No. 8-2 at 252 (ALJ's residual functional capacity determination), 290–291 (vocational expert's relevant testimony).

Plaintiff correctly observes that the term "specific production rate" is not defined in the *Dictionary of Occupational Titles*, an SSA resource that "list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations." ECF No. 12 at 22–23; *Pearson* v. *Colvin*, 810 F.3d 204, 205 n.1, 207 (4th Cir. 2015). Case law on this issue is mixed. Decisions of this Court have held that the phrase "'no strict production quotas' contains terms that are subject to common understanding." *Kenneth L.* v. *Kijakazi*, Civil Action No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021); *accord Brandy K.* v.

*Kijakazi*, Civil Action No. CBD-20-3749, 2022 WL 798690, at *6 (D. Md. Mar. 16, 2022); *Shuronn S.*, Civil Action No. TJS-20-3756, 2022 WL 391434, at *2 (D. Md. Feb. 9, 2022); *Maryann H.* v. *Kijakazi*, Civil Action No. TMD-20-2520, 2021 WL 5239852, at *5 (D. Md. Nov. 10, 2021).  Other decisions of this Court have concluded that "a limitation on 'production rate or pace' combined with a prohibition on quotas"—or an explanation, additional descriptor, or example—"provides enough detail for judicial review."  *Melissa J.* v. *Kijakazi*, Civil Action No. BAH-22-1003, 2023 WL 206686, at *3 (D. Md. Jan. 13, 2023) (collecting cases); *Briana H.* v. *O'Malley*, Civil Action No. CDA-23-1288, 2024 WL 4349836, at *5 (D. Md. Sept. 30, 2024) (explanation); *Dawn B.* v. *Kijakazi*, Civil Action No. BPG-21-69, 2022 WL 1714918, at *3 (D. Md. Jan. 11, 2022) (additional descriptor); *Jackie W.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (example).  Some decisions of this Court have concluded that phrases like "specific production rate pace," even when coupled with examples ("such as assembly line work or hourly production quotas"), are too ambiguous to permit judicial review.  *Alkein C.* v. *Bisignano*, Civil Action No. TJS-25-1310, 2026 WL 1266164, at *2 (D. Md. May 8, 2026); *Al-Nissa J.* v. *Bisignano*, Civil Action No. DRM-25-1593, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026).

The undersigned concludes that the ALJ's hypothetical question in the case at bar "contains terms that are subject to common understanding."  *Kenneth L.*, 2021 WL 4198408, at *2 (finding that judicial review was not frustrated because the term "no strict production quotas" "plainly relates to the rigidity of the occupations' production requirements"); *see also* *Autumn C.* v. *Bisignano*, Civil Action No. EA-25-1592, 2026 WL 2042105, at *3 (D. Md. July 15, 2026) ("Consistent with the body of law arising from decisions of multiple judicial officers of this Court, the undersigned does not find [the 'production rate pace'] limitation too ambiguous to preclude meaningful review.").  Remand is therefore not required on this issue.

16

**III.     CONCLUSION**

For the foregoing reasons, the Commissioner's decision is reversed in part and affirmed in part, and the case is remanded for further proceedings consistent with this Memorandum Opinion pursuant to sentence four of 42 U.S.C. § 405(g).  In remanding for further explanation and analysis, the Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.  A separate Order follows.


Date:  July 31, 2026                                                    /s/
                                                        Erin Aslan
                                                        United States Magistrate Judge